The State ex rel. Oath Burton v. J. E. Montgomery, Judge of Circuit Court, and J. C. Collett, Prosecuting Attorney, of Chariton County; Chariton County, Intervener.—291 S. W. 472.

Court en Banc, February 15, 1927.

**1. PROHIBITION: Prior Challenge of Jurisdiction of Trial Court: Immaterial.** A challenge of the jurisdiction of the trial court before applying to this court for a writ of prohibition is not a jurisdictional requirement, and where respondents in their return admit, by failing to deny, relator's charge that unless prohibited they will proceed to try the case, the fact that objection to their jurisdiction was not previously made becomes immaterial.

**2. ———: Proceedings: Governed by Common-Law: Admission by Silence.** Proceedings in prohibition in this court are governed, not by the code, but by the general law on the subject, and in such cases the common-law practice prevails. But according to the common law, as well as under the Practice Act, every pleading is taken to confess such traversable matters alleged by the adversary party as it does not traverse.

**3. ———: Issues of Fact: Venue of Crime: Interests of Others not Made Parties.** Ordinarily where the jurisdiction of the trial court depends upon contested allegations of fact which that court is competent to inquire into and determine, prohibition from this court will not issue. And notwithstanding that the respondent circuit judge and prosecuting attorney have not by their return traversed relator's allegation that the crime with which he is charged was committed in another county, and therefore as to them such allegation is admitted to be true and the court has no jurisdiction to try and determine the case, yet if the county has intervened, and the intervener and relator have framed issues which make it necessary to adjudicate and define the boundaries of the county, in an effort to determine whether the crime was committed on land within the county or on land in another county, and such other county and the land owners who would be affected by a determination of that issue have not been made parties, this

court will not attempt upon prohibition to determine on mere technical rules of pleading issues which thus affect both private and public interests, but will deny the writ, and leave relator to his adequate remedy at law, to challenge, by plea in abatement, the jurisdiction of the court in which the charge against him was brought.

Corpus Juris-Cyc. References: **Courts,** 15 C. J., Section 511, p. 1079, n. 41. **Pleading,** 31 Cyc., p. 208, n. 80. **Prohibition,** 32 Cyc., p. 612, n. 94, 95; p. 624, n. 57. **Stipulations,** 36 Cyc., p. 1293, n. 72.

### Prohibition.

PRELIMINARY WRIT DISCHARGED.

*Roy B. McKittrick* and *Grover, Tipton & Graves* for relator.

(1) The middle of the main channel of the Missouri River as it existed on November 30, 1875, is the boundary between Saline and Chariton counties. 1 Wagner's Statutes 1872, 368, 375; Mo. Constitution, Art. 9, secs. 1, 3, 4; Northstine v. Feldmann, 250 S. W. 593; State ex rel. Steele v. Baker, 129 Mo. 486; Alluvial Realty Co. v. Himmel, 229 S. W. 762; 15 C. J. 396, 10. (2) Where the boundary line between nations, states, counties, or individuals is marked by a stream and the location of the stream is altered by erosion and accretion, it continues to be the boundary line; but where the alteration occurs as the result of an avulsion no change is made, but the limits of national, state, county and private estates and jurisdiction remain as before. Oklahoma v. Texas, 260 U. S. 636; Arkansas v. Tennessee, 246 U. S. 173; Missouri v. Nebraska, 196 U. S. 34; Nebraska v. Iowa, 143 U. S. 360; Jeffries v. East Omaha Land Co., 134 U. S. 189; New Orleans v. United States, 10 Pet. 717; Vogelsmeier v. Prendergast, 137 Mo. 288; Rees v. McDaniel, 115 Mo. 151; Cooley v. Golden, 117 Mo. 49; Naylor v. Cox, 114 Mo. 232; McCormack v. Miller, 239 Mo. 468. (3) The agreed facts show that on November 30, 1875, the main channel of the Missouri River was north of where the alleged assault occurred and after the avulsion in June, 1879, when the river cut through, the peninsula was south of that place and has remained in practically the same position since that time. Intervener pleads estoppel or laches through the action of officers and others of Chariton County and the non-action of Saline County and its officers except the conveyance by Saline County in March and April, 1925, as fixing the extent and jurisdiction of said counties. (a) The facts alleged by intervener as an estoppel *in pais* and the facts admitted in the agreed facts are not sufficient to constitute an estoppel *in pais*. 21 C. J. 1249; Blodgett v. Perry, 97 Mo. 272; Doe Run Lead Co. v. Maynard, 283 Mo. 677; Acton v.

Dooley, 74 Mo. 67.   (b)   This is a legal action.   The estoppel pleaded is an estoppel against a county and is based upon laches, and laches does not lie as a defense to a legal action.   Mullins v. Kansas City, 268 Mo. 460; Hayes v. Schall, 229 Mo. 124; Chilton v. Nickey, 261 Mo. 243; Willis v. Robinson, 237 S. W. 1036; Kellog v. Moore, 271 Mo. 193.   (c)   Assuming the allegations of the proper elements of estoppel and that laches would lie in a legal action, even then the actions of the officers of Saline or Chariton counties, the parties claiming title to this land or their privies, or any other parties, have no effect on the fixed extent of these counties, as they were fixed by the action of the Legislature and by the Constitution, and can only be changed in the manner provided by law.   Northstine v. Feldmann, 250 S. W. 592; Senter v. Lumber Co., 255 Mo. 605; Bartlett v. Kauder, 97 Mo. 361; St. Louis v. Gorman, 29 Mo. 599; State v. Keane, 84 Mo. App. 130; Steckel v. Vancil, 92 Kan. 593; Brace v. State, 95 Pac. 282; Russell v. C. M. Robinson Co., 153 Ala. 333; Crane v. Reeder, 25 Mich. 320; State v. Portsmouth Bank, 106 Ind. 458.

*John D. Taylor* for intervener.

(1)   Unless the lack of jurisdiction is apparent on the face of the proceeding it is a general rule that a writ of prohibition will not be issued to an inferior court unless the attention of the court, whose proceedings it is sought to arrest, has been called to the lack of jurisdiction on which the application for prohibition is based.   State ex rel. v. Scarritt, 128 Mo. 337; State ex rel. v. Gill, 137 Mo. 681; State ex rel. v. McQuillan, 256 Mo. 693, 260 Mo. 176, 262 Mo. 268; State ex rel. v. Huck, 296 Mo. 374; State ex rel. v. Shane, 297 Mo. 369. (2)   Relator has an adequate remedy at law.   If upon the trial of the cause it should appear from the evidence that the offense was not committed in Chariton County, as alleged in the information, it becomes the duty of the trial judge to suspend further proceedings in the cause.   It must be presumed that courts will follow the law. Moreover, the question of venue is one of the issues to be set up in the information, and sustained by the evidence.   In the event of conviction he has a remedy by appeal.   32 Cyc. 620 (11); R. S. 1919, secs. 3722, 3729 to 3732; State ex rel. v. Stobie, 194 Mo. 14, 51; State ex rel. v. Henson, 217 S. W. 19.   (3)   Chariton County has been exercising jurisdiction over the territory, the scene of the alleged offense, for more than forty-seven years.   During all of that time the southern boundary line, the line between the County of Saline and the County of Chariton, has been recognized by said counties and by the State of Missouri as the center of the main channel of the Missouri River as it now is.   The territorial jurisdiction of Chariton County as determined by its boundary line fixed by the

Legislature prior to 1875, and recognized by the Constitution, is the center of the main channel of the Missouri River. The right of the county to continue the exercise of its jurisdiction over this territory can only be challenged by the State in a proper proceeding. An individual cannot question the organization or the territorial extent of a county in a collateral attack, as is the case at bar. State v. Fuller, 96 Mo. 165; State ex inf. McAllister v. Drain. Dist., 290 Mo. 62; Fredericktown v. Fox, 84 Mo. 65; Flynn v. City of Neosho, 114 Mo. 573; School District v. Hodgin, 180 Mo. 70; Black v. Early, 208 Mo. 281 l. c. 303; State ex rel. v. Sheetz, 279 Mo. 429.

*F. C. Sasse, M. J. Lilly* and *Lamb & Lamb, amici curiae.*

(1) The matters and facts set forth in the stipulation filed herein constitute a defense and answer complete and sufficient to the petition of relator. By these facts Saline County and relator in her name are estopped to claim or assert jurisdiction over this territory. The preliminary rule in prohibition should be quashed. Cases involving the same principle, but not boundary lines: State ex rel. v. Town of Westport, 116 Mo. 587; Stamper v. Roberts, 90 Mo. 683; Kircher v. Evans, 247 S. W. 251; Iowa ex rel. v. City of Des Moines, 31 L. R. A. 186; Simpson v. Stoddard Co., 173 Mo. 462; Troll v. City of St. Louis, 257 Mo. 660; Mullins v. Kansas City, 268 Mo. 460. Cases involving boundary lines: Rhode Island v. Massachusetts, 4 How. (U. S.) 590; Indiana v. Kentucky, 136 U. S. 479; Virginia v. Tennessee, 148 U. S. 501; Louisiana v. Mississippi, 202 U. S. 1; Edwards Co. v. White Co., 85 Ill. 390; Roane Co. v. Anderson Co., 89 Tenn. 259; Maryland v. Virginia, 217 U. S. 134; New Mexico v. Colorado, 267 U. S. 30. (2) When the channel of the Missouri River changed its course by reason of the avulsion in June, 1879, the boundary line between Saline and Chariton counties changed with the river and the boundary line then and ever since has been the middle of the main channel of the river. If the above statement be not the law of this State and be contrary to the recognized rule on the subject, then this court ought at this time establish such a ruling applicable to inland counties of the State where the boundaries between them are marked by running streams. Secs. 9301, 9390, 9407. R. S. 1919.

ATWOOD, J.—This is an original proceeding in which relator, charged by information in the Circuit Court of Chariton County with assault with intent to kill, asks us to prohibit respondents J. E. Montgomery and J. C. Collett, who are the Circuit Judge and the Prosecuting Attorney, respectively, of said county, from further entertaining and prosecuting said charge, on the ground that the alleged

crime was not committed in Chariton County, and said Circuit Court of Chariton County is, therefore, without jurisdiction.

Relator's amended petition describes with particularity the land on which the alleged crime was committed with reference to course of the main channel of the Missouri River both before and after June, 1879, when the stream is alleged to have "perceptibly and abruptly changed its course" between the counties of Saline and Chariton; alleges that the boundary between the counties of Chariton and Saline was fixed as the main channel of the Missouri River by the statute of 1865; and further alleges that after said change said land, although formerly south of the main channel of the Missouri River, was and is now north of said main channel, and not within the boundary of Chariton County. Said petition further alleges that unless prohibited from so doing said circuit court will proceed with the trial of said cause, and that relator has no adequate remedy at law because said prosecution in Chariton County will not bar a similar prosecution for the same alleged offense in Saline County. Attached to the petition is a certified copy of said information, and of the Chariton County Circuit Court records showing the filing date of said information and the pendency thereof in said Circuit Court of Chariton County, at Keytesville, Missouri.

Respondents waived issuance and service of process and consented to the issuance of the preliminary rule, and on application to this court Chariton County was permitted to intervene. Application for permission to intervene was filed by a number of alleged landowners, which application was denied, but their attorneys were given permission to file briefs as *amici curiae*.

Respondents' return, after admitting the formal allegations of relator's petition, alleges that relator has an adequate remedy by means of appeal from any judgment or conviction that might be entered against him, and further alleges that he has not attacked or challenged or by any means raised the question of jurisdiction in the Circuit Court of Chariton County, Missouri; that relator's proceeding "is an attempt to decide matters purely of a civil nature, to-wit, a dispute regarding the ownership of lands in the Missouri River bottoms, and to decide whether said lands are located in said Chariton County or in Saline County, Missouri; and that such an issue cannot and should not be decided in a proceeding of this character."

Chariton County, intervener, filed return making similar admissions and pleading like defenses. Said return further specifically denies relator's allegations as to the location of the land on which the alleged offense was committed; denies that said land was ever at any time south of the main channel of the Missouri River, or south of the boundary line between Saline and Chariton counties, or within the boundaries of Saline County, and denies that said land is or

has ever been a part of the territorial sovereignty of Saline County. This return further avers that at the time of the alleged offense Ezra Williams was the owner of Lots 4, 5 and 6 in the Southeast Quarter of Section 34, Township 54, Range 19, Chariton County, Missouri; that said land is shown to be in Chariton County, Missouri, and north of the Missouri River, by plat and survey made by A. F. Arrington, County Surveyor of Chariton County, Missouri, and on file in the office of the Clerk of the County Court of said Chariton County, and that no such land is described, platted or shown upon any map or plat made and filed by Charles H. Swift, County Surveyor of Saline County, and filed in the office of the County Clerk of Saline County; that in the year 18— the boundary line between Chariton and Saline counties was fixed and defined by the Legislature "in the middle of the main channel" of the Missouri River; that in the month of June, 1879, the Missouri River cut through south of the above described Ezra Williams land, and following this "avulsion" "gradually adjusted itself to a channel" south of the aforesaid land, and "that notwithstanding the fact that the present center of the main channel of the Missouri River may not be located along the same line where the same was located at the time of the fixing of the boundary line between Chariton County and Saline County by act of the Legislature, as aforesaid, and may not be along the same line where the center of the main channel of the Missouri River was located at the time of the adoption of the Constitution in 1875, and notwithstanding the fact, if it be a fact, that the lands belonging to Ezra Williams, and other lands similarly situated, were in whole or in part south of a line being the center of the main channel of the Missouri River between Saline and Chariton counties in 1875, the lands belonging to Ezra Williams, and other lands surrounding, adjacent and contiguous thereto, are a part of the territory of Chariton County, Missouri, and the boundary line between Chariton County, Missouri, and Saline County, Missouri, is a line along the center of the main channel of the Missouri River where the same now is." Intervener affirmatively pleads prescription, laches, acquiescence and estoppel.

Relator's reply to both returns consists of a general denial, coupled with admissions as to the lands owned by Ezra Williams, that according to the general statutes of Missouri, 1872, the boundary line between Chariton and Saline counties was fixed as "the middle of the main channel of the Missouri River," and that following an avulsion in June, 1879, the Missouri River gradually adjusted itself to the channel described in intervener's return. Relator thereafter filed a motion to strike out parts of intervener's return relating to estoppel, laches, etc. Certain facts are stipulated as in the case by relator and intervener to which we shall hereafter refer.

Counsel for intervener first suggests that our writ should not issue because it does not appear that relator challenged the jurisdiction of the trial court before applying here for writ of prohibition. It is generally held that a writ of prohibition will not be directed to an inferior court on the ground of lack of jurisdiction unless in some manner its attention has first been called thereto. [State ex rel. Brncic v. Huck, 296 Mo. l. c. 382; State ex rel. Burns v. Shain, 297 Mo. l. c. 381.] But, there are well known exceptions to this rule, and in McEntee v. Bright, 224 Mo. 514, we said that "it has never been a hard-and-fast rule in this State." Also, in State ex rel. McCaffery v. Aloe, 152 Mo. 466, we held that "it is not a jurisdictional requirement." Certainly where the respondents, as in this case, made return admitting, by failure to deny, relator's allegation that unless prohibited from so doing they will proceed with the trial of the case, the fact that the objection was not previously raised becomes immaterial. [State ex rel. Mo. Pac. Ry. Co. v. Williams, 221 Mo. 227.]

The determination of the venue is incident to the trial of a criminal case. It is apparent that in the instant case the jurisdiction of the circuit court depends upon contested allegations of fact which that court is competent to inquire into and determine. Ordinarily, in such cases prohibition does not issue. [Coleman v. Dalton, 71 Mo. App. l. c. 24; State v. Withrow, 141 Mo. 69; State ex rel. Am. Pigment and Chem. Co. v. Shields, 237 Mo. l. c. 334; Ex parte Southwestern Surety Ins. Co., 247 U. S. 19; 19 Am. & Eng. Ency. Law, 271; 16 Ency. Pl. & Practice, 1127.] It is true that respondents' return does not deny or otherwise put in issue any of the allegations of relator's petition to the effect that the alleged offense was not committed within the boundaries of Chariton County. Proceedings of this sort which originate in this court are governed not by the code but by the general law on the subject (State ex rel. v. Eby, 170 Mo. l..c. 527), and in such cases the common law practice prevails. [State ex rel. Conran v. Williams, 96 Mo. l. c. 18.] Also, according to the common law, as well as under our Practice Act, every pleading is taken to confess such traversable matters alleged on the other side as it does not traverse. [Perry on Common Law Pleading, 281; Curl & Hardwick v. Mann, 4 Mo. 273; Sec. 2059, R. S. 1919.] Furthermore, respondents did not join in the statements of facts agreed to by relator and intervener and they are not bound thereby. It thus appears on the face of the record that as between relator and respondents as far as this prosecution is concerned it stands admitted that the trial court is without jurisdiction to hear and determine the case. But it also appears from intervener's return and relator's reply, as well as their agreed statements of facts, that these parties have sought to frame issues that would require us to make some adjudication affecting or defining the territorial boundaries of Chariton

and Saline counties, and affecting muniments of title issuing from said counties, although neither Saline County nor the land owners that would be affected are parties to this suit. Issues thus designed to affect such public and private interests should certainly not be disposed of on a mere technical rule of pleading. Relator has an adequate remedy at law in that he can challenge the jurisdiction of the circuit court by plea in abatement. Our careful consideration of the entire record forces us to conclude that a proper exercise of our discretion calls for a denial of the writ.

For the reasons above stated our preliminary writ heretofore issued is quashed and the proceeding dismissed. All concur, except *Graves, J.,* who dissents; *Gantt, J.,* not sitting.